UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------x

REGINALD PETTY,                                   :

                  Plaintiff,          :          **REPORT AND RECOMMENDATION TO THE HONORABLE JED S. RAKOFF**

       - against -                          :

GLENN GOORD, et al.,                              :

            Defendants.                  :          00 Civ. 803 (JSR)(FM)

--------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.    <u>Introduction</u>

        In this action brought pursuant to 42 U.S.C. Section 1983, <u>pro se</u> plaintiff Reginald Petty ("Petty")'s sole remaining claim is that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by disclosing his HIV-positive status to non-medical personnel, which, in turn, led to harassment of him while he was incarcerated at the Green Haven Correctional Facility ("Green Haven").[1] Following a remand from the United States Court of Appeals for the Second Circuit, the defendants have filed a renewed motion to dismiss Petty's complaint, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the ground that he failed to exhaust his administrative remedies. Although the procedural path is somewhat convoluted, the

---

[1]    Petty is no longer lodged at Green Haven. <u>See</u> http://nysdocslookup.docs.state. ny.us/GCA00P00/WIQ3/WINQ130 (last visited Feb. 6, 2007). He concedes that the harassment ceased once he was transferred from Green Haven to another state correctional facility. (<u>See</u> Pl.'s Aff. in Opp., dated Aug. 12, 2001 ("Pl.'s Opp. I"), ¶ 21).

proper disposition of this motion seems clear.  As set forth below, the relief requested

should be denied because there are issues of fact as to whether Petty's acknowledged

failure to exhaust his remedies should be excused.

II.    Relevant Procedural History

Petty's undated complaint was received by the Pro Se Office of this Court

on September 7, 1999, and thereafter was filed on February 4, 2000.  (See Docket No. 2).

Rather than answering the complaint, the defendants filed a motion to dismiss which

Judge Mukasey granted on several grounds, including Petty's failure to exhaust his

administrative remedies.  See Petty v. Goord, No. 00 Civ. 803 (MBM), 2002 WL

31458240 (S.D.N.Y. Nov. 4, 2002).  Petty then filed a timely notice of appeal on

November 22, 2002.  (Docket No. 31).

On January 20, 2005, in a summary order, the Court of Appeals dismissed

most of Petty's claims on appeal, but vacated the judgment with respect to Petty's Eighth

Amendment claim.  The court further directed that the district court determine on remand:

(a) "whether [Petty's] transfer to another facility rendered [his] administrative remedies

unavailable"; (b) "if [Petty's] administrative remedies were available, whether the

[defendants] were estopped from asserting failure to exhaust as a defense"; and (c) "if

[Petty's] administrative remedies were available and one or all of the [defendants] were

not estopped from asserting failure to exhaust as a defense, whether [Petty] was justified

in not pursuing a grievance in accordance with the procedures set forth by the New York

Department of Correctional Services" ("DOCS").  (See Docket No. 34) (citing Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004); Giano v. Goord, 380 F.3d 670 (2d Cir. 2004)).

On May 31, 2006, the defendants filed their "second motion to dismiss," arguing that Petty has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a).  (Docket Nos. 37-40).  On July 31, 2006, Petty submitted opposition papers in which he set forth the facts relevant to his acknowledged failure to exhaust his administrative remedies.  (Docket No. 44).[2]  On August 15, 2006, the defendants filed their reply memorandum of law.  (Docket No. 43).  Accordingly, the second motion to dismiss is fully submitted.

In October 2006, this case was reassigned to Your Honor following Judge Mukasey's retirement.  (Docket No. 45).  Shortly thereafter, the case was referred to me for general pretrial purposes.  (See Docket No. 44).

III.   Relevant Facts

The relevant facts, viewed in the light most favorable to Petty, establish as follows:

---

[2]      Petty's opposition papers do not contain any discussion of the applicable law. During a telephone conference on May 16, 2006, however, Judge Mukasey, to whom this case then was assigned, advised Petty that to oppose the defendants' motion he need only provide the facts that he believed showed why he was entitled to proceed despite the PLRA exhaustion requirement.  (See Docket No. 41 (May 16, 2006 Tr. at 4)).

A.  <u>DOCS Inmate Grievance Program</u>

The DOCS administrative grievance procedure for inmates is known as the "Inmate Grievance Program" ("IGP").  <u>See</u> N.Y. Comp. Codes R. Regs. ("NYCCRR"), tit. 7, ch. VIII, pt. 701.  An IGP grievance potentially involves as many as three steps. <u>See</u> <u>id.</u>  Although the applicable procedures have changed slightly over time, in 1996, an inmate first had to file a grievance within fourteen calendar days of an alleged occurrence.  <u>Id.</u> § 701.7(a)(1) (repealed Mar. 30, 2004).  Representatives of an Inmate Grievance Resolution Committee ("IGRC") then were afforded seven working days in which to review the grievance and resolve it informally, or, if there was no resolution, to conduct a full IGRC hearing and take action.  <u>Id.</u> § 701.7(a)(3), (4).  Thereafter, within four working days of his receipt of the IGRC's written response to the grievance, the inmate could appeal an adverse decision to the superintendent of the facility.  <u>Id.</u> § 701.7(b)(1).  The superintendent, in turn, was required to render a decision within ten working days of receipt of the inmate's appeal.  <u>Id.</u> § 701.7(b)(5).  At the last stage, an inmate could appeal an adverse decision by the superintendent to the DOCS Central Office Review Committee ("CORC") within four working days after it was issued.  <u>Id.</u> § 701.7(c)(1).  The IGP further provided that absent the grievant's written consent, the time limits for a decision at each stage could not be extended, and that matters not decided within the time limits could then be appealed to the next step.  <u>Id.</u> § 701.8.

4

B.    Petty's Inmate Grievance

On September 19, 1996, Petty filed an inmate grievance at Green Haven, in which he alleged that the Green Haven medical staff had improperly disclosed his confidential medical information to security and other non-medical staff.  (Decl. of Josh Krom, dated May 23, 2006 ("Krom Decl."), Ex. A at 4).[3]  The following month, Petty was confined in the Special Housing Unit ("SHU") at Green Haven.  (See Pl.'s Opp. I ¶ 19; Pl.'s Reply Mot. to Defs.' Mot. to Dismiss ("Pl.'s Opp. II") at 7).  While he was in the SHU, Petty became severely depressed because correctional officers were harassing him and calling him names due to his HIV-positive status.  (Pl.'s Opp. I ¶ 20).  As a result, Petty tried to commit suicide several times.[4]  Petty consequently was committed to the custody of the Central New York Psychiatric Center ("CNYPC") from October 22 until at least December 31, 1996.  (See Pl.'s Opp. I ¶¶ 20-22; Pl.'s Opp. II at 7).  Prior to this transfer, Petty also was held in Green Haven's psychiatric unit from October 18 to 22, 1996.  (Pl.'s Opp. II at 9).

On October 22, 1996, the date of Petty's transfer to the CNYPC, Sergeant A. Miller, an IGRC investigator, made an entry on an IGRC Investigation Flow Sheet

---

[3]    The following day, Petty also wrote to the medical director at Green Haven to complain about these disclosures.  (See Compl. ¶ 7).

[4]    In a footnote, the defendants suggest that Petty's complaint "alleges in conclusory fashion, and without any support, that defendants' harassment and discrimination caused him physical injury."  (Defs.' Mem. at 4 n.2).  Construing Petty's complaint liberally, however, the Court cannot exclude the possibility that the means he used to attempt suicide resulted in some physical injury to him.

which stated that Petty was "unavailable for further investigation due to transfer to

CNYPC." (Krom Decl. Ex. A at 5). That same day, the IGRC concluded its

investigation of Petty's grievance, recommending somewhat cryptically: "U.A.G.R.A.[5]

To the extent that no medical information desclosed [sic] to non-medical, or medical

related personel [sic] with patients [sic] consent." (Id. at 3, 6). Although Petty did not

sign to acknowledge his receipt of this decision, the Green Haven grievance clerk

forwarded an appeal to the superintendent on Petty's behalf on October 24, 1996. (Id.).

On October 28, 1996, Superintendent Artuz denied Petty's appeal on the

ground that he had "not provided sufficient information to investigate his allegations."

(Id. at 2). The superintendent further "noted that security staff will be present during

medical examinations when it is determined necessary by the security supervisor." (Id.).

There is no evidence that Petty ever received a copy of this decision prior to filing this

suit.

Following his release from the CNYPC, Petty was returned to Green

Haven. (Pl.'s Opp. I ¶ 22). Upon his return, correctional officers continued to harass

Petty because of his HIV-positive status until January 10, 1997, when he again was

committed to the CNYPC. (Id.). On January 28, 1997, Petty was re-released from the

CNYPC and transferred to the Wende Correctional Facility. (Id. ¶ 23; Pl.'s Opp. II at 9).

Petty did not appeal the superintendent's denial of his grievance to CORC while he was at

---

[5]     No explanation of this acronym has been provided by the parties.

the CNYPC, after his return to Green Haven, or once he was sent to Wende.  (See Decl.

of Thomas Eagen, dated May 19, 2006 ("Eagen Decl."), Ex. A) (printout of Petty's

appeals to CORC).  Petty contends that he could not file a timely appeal because he was

outside DOCS jurisdiction when it was due.  (Pl.'s Opp. II at 9).

IV.    Discussion

     A.    Petty's Rule 12(b)(1) Motion Must Be
          Treated as a Summary Judgment Motion

       The defendants have moved to dismiss Petty's complaint pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure solely on the ground that he has failed to

exhaust his administrative remedies in accordance with the requirements of the PLRA, 42

U.S.C. § 1997e(a).  Rule 12(b)(1) permits a defendant to seek the dismissal of a claim

when the federal courts lack subject matter jurisdiction over it.  Fed. R. Civ. P. 12(b)(1).

In deciding such a motion, a district court may refer to evidence outside the pleadings.

Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  Accordingly, in this case,

the defendants have submitted the declarations of Josh Krom, the Inmate Grievance

Program Supervisor at Green Haven, and Thomas Eagen, the Director of the DOCS

Inmate Grievance Program, in support of their motion to dismiss.  (See Docket Nos. 38,

39).  Attached to both declarations are relevant DOCS documents.  (Id.).

       Although evidence outside the pleadings may be considered in connection

with a motion under Rule 12(b)(1), the PLRA exhaustion requirement is not

jurisdictional.  Richardson v. Goord, 347 F.3d 431, 434 (2d Cir. 2003).  Rather, want of

exhaustion is simply an affirmative defense which may or may not be asserted by a defendant.  See Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004) (citing Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999)).  For this reason, Rule 12(b)(1) is not an appropriate means to seek the dismissal of Petty's Eighth Amendment claim based upon his failure to exhaust.  See Rivera v. Goord, No. 03 Civ. 830, 2004 WL 2151089, at *8 (W.D.N.Y. Sept. 22, 2004); McCoy v. Goord, 255 F. Supp. 2d 233, 249 (S.D.N.Y. 2003).

The inapplicability of Rule 12(b)(1) does not necessarily sound the death knell for the defendants' motion since it may be "converted" into another more suitable motion.  For example, in McCoy, the defendants moved to dismiss a prisoner's claims pursuant to Rules 12(b)(1) and (b)(6) on the ground that the prisoner had failed to exhaust his grievance as required by the PLRA.  After concluding that Rule 12(b)(1) was not the proper vehicle, the court converted the defendants' Rule 12(b)(6) motion into a motion for summary judgment "limited to the narrow issue of exhaustion."  McCoy, 255 F. Supp. 2d at 249, 251, 255-57.  The court reasoned that this was proper because the plaintiff had been given both notice and an opportunity to submit evidence relating to the issue of exhaustion.  Id. at 255.  Similarly, in Rivera v. Pataki, No. 01 Civ. 5179 (MBM), 2003 WL 21511939, at *5 (S.D.N.Y. July 1, 2003), a motion to dismiss a prisoner's complaint on exhaustion grounds pursuant to Rules 12(b)(1) and (b)(6) was converted into a summary judgment motion so that the court could determine whether the prisoner had exhausted his administrative remedies.  As in McCoy, the court reasoned that the

8

conversion of the motion was proper because the plaintiff had been given both notice and an opportunity to respond before the court reached its decision.  Id.

Perhaps the closest case to this one is Hernandez v. Coffey, No. 99 Civ. 11615 (WHP), 2006 WL 2109465 (S.D.N.Y. July 26, 2006).  There, the prisoner's complaint was initially dismissed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the ground that he had failed to exhaust his administrative remedies.  The Second Circuit vacated the judgment, however, and directed the district court to reexamine the exhaustion issue in light of its decisions in Giano and Hemphill.  Id. at *1. On remand, after the defendants again moved to dismiss under Rule 12(c), Judge Pauley converted their motion into a summary judgment motion.  Id. at *2.  The judge held that conversion was warranted, even without prior notice to the parties, because both sides had submitted materials outside the pleadings for the court's consideration and therefore could not claim to have been surprised by the conversion of the motion.  Id.

In this case, the defendants have based their motion exclusively on Rule 12(b)(1), which – unlike Rules 12(b)(6) and 12(c) – does not expressly allow for the conversion of a motion to dismiss into a motion for summary judgment.  See Fed. R. Civ. P. 12(b), (c).  Nonetheless, many courts have concluded that the outcome should be the same.  See, e.g., Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005) ("[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the

merits of the case." (quoting <u>Holt v. United States</u>, 46 F.3d 1000, 1003 (10th Cir. 1995)));

<u>Bryce v. Episcopal Church in the Diocese of Colorado</u>, 289 F.3d 648, 654 (10th Cir.

2002) ("The crucial element is the substance of the motion, not whether it is labeled a

Rule 12(b)(1) motion rather than 12(b)(6)."); <u>Avedis v. Herman</u>, 25 F. Supp. 2d 256,

262-63 (S.D.N.Y. 1998) (recognizing an exception to the general rule against converting

a Rule 12(b)(1) motion into a summary judgment motion when the jurisdictional claim

and the merits are intertwined); <u>Fraternal Order of Police, Nat'l Labor Council, USPS No.</u>

<u>2 v. U.S. Postal Serv.</u>, 988 F. Supp. 701, 704 n.2 (S.D.N.Y. 1997) (finding no prejudice

from the conversion of a Rule 12(b)(1) motion into one under Rule 12(b)(6) because the

plaintiffs had fully briefed whether the defendants stated a claim); 5C Charles Alan

Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1366 n.9 (3d ed. 2004)

("Defendants often move to dismiss for lack of subject matter jurisdiction when they are

actually challenging the legitimacy of plaintiff's claim for relief.  When outside evidence

is presented to support a Rule 12(b)(1) motion of this type, the court will bring the

conversion provision into operation."); <u>see also</u> Laura A. Kastner <u>et al.</u>, 2 <u>Moore's</u>

<u>Federal Practice</u> § 12.34[4][a] (3d ed. 2000) ("Although labeling a motion incorrectly will

not affect a movant's right to relief, dismissing it under the wrong provision will, because

Rule 12(b)(6) dismisses a claim on its merits, whereas Rule 12(b)(1) does not.").

        In this case, the defendants clearly have mischaracterized Petty's failure to

exhaust his remedies as a jurisdictional defense.  However, both Petty and the defendants

have submitted materials outside of the pleadings to the Court in connection with the Rule

10

12(b)(1) motion.  Indeed, Judge Mukasey expressly allowed Petty to oppose the motion solely on the basis of such facts.  In such circumstances, the parties can claim neither surprise nor prejudice by the conversion of the defendants' Rule 12(b)(1) motion into a motion for summary judgment pursuant to Rule 56 with respect to the issue of exhaustion.

      B.    <u>Standard of Review</u>

      Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when:

> the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that
> the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, the court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and . . . draw all permissible inferences in favor of that party."  <u>Fischl v. Armitage</u>, 128 F.3d 50, 55 (2d Cir. 1997).  The Court also must accept as true the non-moving party's evidence, if supported by affidavits or other evidentiary material.  <u>See</u> <u>Kulak v. City of New York</u>, 88 F.3d 63, 70 (2d Cir. 1996).  Assessments of credibility, choosing between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court.  <u>Fischl</u>, 128 F.3d at 55.  Thus, "[t]he court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried."  <u>Id.</u>

Although the same summary judgment rules apply to a party proceeding <u>pro se</u>, special latitude is appropriate to ensure that a meritorious claim is not foreclosed simply because the papers submitted in opposition to the motion are inartfully worded. See <u>Morris v. Citibank, N.A.</u>, No. 97 Civ. 2127 (JGK), 1998 WL 386175, at *2 (S.D.N.Y. July 8, 1998).  By the same token, however, "a <u>pro se</u> party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." <u>Odom v. Keane</u>, No. 95 Civ. 9941 (SS), 1997 WL 576088, at *3 (S.D.N.Y. Sept. 17, 1997) (quoting <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1995)).

C.      Exhaustion of Administrative Remedies

Under the PLRA, an inmate seeking to maintain an action challenging prison conditions must first exhaust all available administrative remedies.  42 U.S.C. § 1997e(a).  The duty to exhaust administrative remedies before filing suit "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2003).  This procedural requirement is mandatory.  See <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001).  Moreover, the Supreme Court recently has held that the PLRA requires "proper" exhaustion; accordingly, before initiating a lawsuit the prisoner must comply "with an agency's deadlines and other critical procedural rules." <u>Woodford v. Ngo</u>, 126 S. Ct. 2378, 2386 (2006).

In this Circuit, district courts must engage in a "three-part inquiry" to determine whether an inmate's failure to exhaust his remedies should be excused.  <u>See</u>

12

Hemphill, 380 F.3d at 686.  First, the court must determine whether administrative remedies in fact were available to the prisoner.  Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004).  Second, if such remedies were available, the court must determine whether the defendants' own actions inhibited the inmate's exhaustion of administrative remedies, thereby requiring that one or more of the defendants be equitably estopped from raising the failure to exhaust as a defense.  Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004).  Finally, if administrative remedies were available and the defendants are not estopped, the court must determine whether any special circumstances justify the prisoner's failure to comply with administrative procedural requirements.  Giano v. Goord, 380 F.3d 670, 676 (2d Cir. 2004).

    1.  <u>Availability of Administrative Remedies</u>

    To determine whether an institution's ordinary grievance procedures were available to an inmate, courts apply an objective test, asking "would 'a similarly situated individual of ordinary firmness' have deemed them available."  Hemphill, 380 F.3d at 688 (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)).  Applying that test, judges in this District have found grievance procedures unavailable (or potentially unavailable) when an inmate has been transferred to another jurisdiction or held under unusually restrictive conditions.  See, e.g., Lealock v. City of New York, No. 01 Civ. 2849 (DLC), 2005 WL 323723, at *5 (S.D.N.Y. Feb. 10, 2005) (concluding that administrative remedies were unavailable because the inmate was transferred from a city-operated prison to a state-operated prison the day after the alleged violation occurred);

13

Perkins v. Obey, No. 00 Civ. 1691 (LTS)(JCF), 2005 WL 433580, at *2 , *4 (S.D.N.Y. Feb. 23, 2005) (finding question of fact as to availability of administrative remedies where the inmate alleged that he was unable to submit his appeal while in keeplock); Hairston v. LaMarche, No. 05 Civ. 6642 (KMW)(AJP), 2006 WL 2309592, at *8 (S.D.N.Y. Aug. 10, 2006) (issue of fact existed as to whether administrative remedies were available to a prisoner who missed the deadline to file a grievance because he was confined in the SHU).

In this case, the IGRC investigator found that Petty was "unavailable for further information due to his transfer to the CNYPC."  (See Krom Decl. Ex. A) (emphasis added). The IGRC then denied Petty's grievance on October 22, 1996, the same day that Petty was transferred to the CNYPC.  (Id.).  It is unclear whether Petty himself appealed the IGRC's decision or the grievance clerk simply acted on his own.  In any event, it is undisputed that the superintendent denied Petty's appeal on October 28, 1996, while Petty was in the custody of the CNYPC.  (See id.).  At that point, under the then-applicable procedures, Petty had four working days to appeal the superintendent's decision to CORC.  See NYCCRR § 701.7(c)(1).  However, Petty was in the CNYPC until at least December 31, 1996, more than one month after the time in which to submit an appeal to CORC had expired.

There is no indication that Petty ever received notice of the superintendent's decision while he was at the CNYPC or upon his return to Green Haven.  The defendants nevertheless argue that, even if Petty never received notice of the superintendent's

14

decision, he should have filed an appeal with CORC once the superintendent's time to

resolve his appeal had expired.  In their view, Petty "could have appealed his grievance,

as well as the superintendent's alleged failure to respond to it, to CORC by filing a Notice

of Decision to Appeal (Form #2133) with the IG[R]C."  (Defs.' Reply Mem. at 5).  The

defendants have made no showing, however, that "Form #2133" was available to patients

at the CNYPC, which apparently is a facility operated by the New York State Office of

Mental Health ("OMH"), rather than DOCS.  (See id. at 5).  See also http://www.docs.

state.ny.us/faclist.html (last visited Feb. 1, 2007) (DOCS webpage listing all DOCS

correctional facilities); http://www.omh.state.ny.us/omhweb/facilities/cnpc/facility.htm

(last visited Feb. 1, 2007) (OMH website describing the CNYPC).  Accordingly, on the

present record, there is a genuine issue of fact as to whether Petty's administrative

remedies were available to him while he was committed to the custody of the CNYPC.

See Pendergrass v. Sanney, No. 01 CV 243A, 2004 WL 1946458, at *2 n.5 (W.D.N.Y.

Aug. 18, 2004) ("Where a prison fails to provide access to grievance forms, a prisoner's

complaint cannot be dismissed for failure to exhaust.").

       2.    Estoppel

      In Ziemba, the Second Circuit adopted Fifth Circuit case law holding that

prison officials could be equitably estopped from relying on lack of exhaustion as the

basis for dismissing a prisoner's complaint.  See Ziemba, 366 F.3d at 163 (citing Wright

v. Hollingsworth, 260 F.3d 357, 358 n. 2 (5th Cir. 2001)).  Here, however, even if the

defendants failed to supply IGP appeal forms to the CNYPC, there is no evidence that

they took any affirmative steps to prevent Petty from filing an appeal.  Accordingly, Petty

cannot rely on the doctrine of equitable estoppel to preclude the defendants from relying

on his failure to exhaust his administrative remedies as an affirmative defense.  See

Ruggiero v. County of Orange, 467 F.3d 170, 178 (2d Cir. 2006) (inmate may not rely on

estoppel in absence of "affirmative act by prison officials that would have prevented him

from pursuing administrative remedies").

> 3.    Special Circumstances

Even if Petty received notice of the superintendent's decision and the

defendants are not estopped from relying on want of exhaustion as an affirmative defense,

Petty still would be entitled to proceed with his Eighth Amendment claim if he can

demonstrate adequate justification for his failure to appeal the superintendent's decision

to CORC.  This requires the court to consider "the circumstances which might

understandably lead usually uncounselled prisoners to fail to grieve in the normally

required way."  Giano, 380 F.3d at 678.

In this case, Petty was committed to the custody of the CNYPC on October

22, 1996, because of multiple suicide attempts.  Thereafter, the superintendent denied

Petty's appeal on October 28, 1996, which would have required Petty to submit his appeal

to CORC less than two weeks into what eventually became a stay of more than two

months at a psychiatric facility.  There has been no showing that Petty then had access to

the forms necessary for an appeal.  There is also no evidence before this Court regarding

Petty's mental state at that time.  Accordingly, at this preliminary stage the Court cannot

rule out the possibility that Petty lacked the practical means or mental capacity necessary to file a timely appeal.

       D.     <u>Conclusion</u>

       Because there are issues of fact as to whether Petty's administrative remedies were available to him while he was in the custody of the CNYPC, or whether special circumstances justified his failure to exhaust those remedies, the defendants' motion to dismiss his complaint (Docket No. 37) should be denied.[6]

V.    <u>Notice of Procedure for Filing Objections to this Report and Recommendation</u>

       The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a) and (e).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff at the United States Courthouse, 500 Pearl Street, New York, New York 10007, to my chambers at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).  Any requests for an extension of time for filing objections must be directed to Judge Rakoff.  The failure to file these timely objections will result in a waiver of those objections for purposes of

---

      [6]     In light of this recommendation, and in an effort to move this seven-year-old case forward, I have issued a separate Order, bearing today's date, scheduling a telephone conference for February 27, 2007.  At that conference, I intend to set a discovery schedule for this case.

appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. §636(b)(1); Fed. R. Civ. P.

6(a), 6(e), 72(b).

Dated:       New York, New York
             February 6, 2007


                                              _____
                                              FRANK MAAS
                                              United States Magistrate Judge


Copies to:

Hon. Jed S. Rakoff
United States District Judge

Reginald Petty
DIN# 91-A-1465
Great Meadow Correctional Facility
P.O. Box 51
E-8-12
Comstock, New York 12821

Jose L. Velez, Esq.
Assistant Attorney General
Office of the Attorney General
  of the State of New York
120 Broadway
New York, New York 10271